UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TODD NORRIS,

    Plaintiff,

v.

THE BOEING COMPANY,

    Defendant.

Case No. C15-1908RSL

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

This matter comes before the Court on the motion for summary judgment filed by defendant, The Boeing Company ("Boeing"). Dkt. # 29. In this case, plaintiff Todd Norris claims that Boeing discriminated against him because of his disability, terminating his employment because it did not want to – or could not – accommodate his medical need for a light-duty assignment. Boeing argues that it terminated plaintiff due to unexcused absences associated with plaintiff's 45-day period of incarceration. Plaintiff maintains that he was on an approved medical leave and not otherwise scheduled to work during his incarceration and that Boeing used the incarceration as a pretext to revoke his approved leave and treat his absences as unexcused. Having reviewed the parties' briefs, declarations, exhibits, and the remainder of the record,[1] the Court finds as follows.

---

[1] In a surreply, Dkt. # 45, plaintiff asks the Court to strike Part A.3 of defendant's reply brief, as well as two declarations attached to that reply, on the grounds that they present new evidence and argument. Dkt. ## 41 at 7–8, 42, 43. Because it is improper to raise new evidence for the first time in a

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 1

**BACKGROUND**

At the time of plaintiff's discharge, he had been employed by Boeing as an aircraft painter since roughly July 19, 1996. Dkt. # 40, ¶ 2. In 1996, while painting the interior of an aircraft, plaintiff slipped and injured his right shoulder. Dkt. # 40, ¶ 3. Plaintiff underwent surgery on this shoulder in 1997 and 2008. Id. After the right-shoulder injury, plaintiff painted predominantly with his left hand, and suffered progressive injuries to his left arm and shoulder as a result. Dkt. # 40, ¶ 4. Due to plaintiff's injuries, various restrictions were placed on the type of work that he could perform at Boeing. See Dkt. # 37-1 at 3–4; Dkt. # 37-2 at 18–24.

In 2011, plaintiff was charged with several misdemeanors. Dkt. # 40, ¶ 6; Dkt. # 23-1 at 3–12. Plaintiff asked his manager at the time, Jamie Wall, about the possibility of work release, which would allow him to continue to work at Boeing during his incarceration. Id. Plaintiff was aware of other Boeing employees – including Mr. Wall – who had participated in a similar work-leave arrangement. Dkt. # 32 at 8–12; Dkt. # 40, ¶ 15. Plaintiff and Mr. Wall discussed a work-release arrangement, but no work-release was officially approved. Dkt. # 32 at 10; Dkt. # 40, ¶ 6.

On March 10, 2011, plaintiff appeared in court for a hearing on a no-contact order violation hearing. Dkt. # 23-1 at 15. Plaintiff had requested and been granted 1.5 hours of medical leave for March 10, 2011, which coincided with the violation hearing. Dkt. # 23-1 at 15–16.

On March 17, 2011, plaintiff was convicted of disorderly conduct. Dkt. # 23-1 at 16. Plaintiff had requested and been granted 8 hours of medical leave for March 17, 2011. Dkt. # 23 at 16–17.

From April 1, 2011, to April 4, 2011, plaintiff was incarcerated. Dkt. # 23-1 at 17. Plaintiff had requested and been granted six and a half hours of medical leave for April 3, 2011,

---

reply to a motion for summary judgment, Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996), the Court declines to consider those portions of the record in ruling on this motion for summary judgment.

to April 4, 2011.  April 1 and 2, 2011, fell on a weekend.  Dkt. # 23-1 at 17–18.  When asked during a deposition whether he was using medical leave to cover to his time in jail, plaintiff responded "I would not have needed FMLA if it would have been over the weekend."  Dkt. # 23-1 at 17.  Later, plaintiff clarified that, "yes, I was using FMLA to cover my time."  Dkt. # 23-1 at 18.

Around July 2011, Eric Hoag replaced Mr. Wall as plaintiff's manager in the painting shop.  Dkt. # 37-1 at 3; Dkt. # 40, ¶ 7; Dkt. # 23-1 at 13.  Mr. Hoag testified that he "didn't have any problem with . . . the quality of [plaintiff's] work," and that he was glad to have plaintiff working in the shop.  Dkt. # 37-1 at 3–4.  Plaintiff and Mr. Hoag never discussed a work-release arrangement.  Dkt. # 23-1 at 28.

In January and May 2012, plaintiff's restrictions were renewed.  Dkt. # 37-2 at 16–18.  In summer 2012, plaintiff was placed on a temporary light-duty assignment in a Boeing department called the "Ergo Crib" to accommodate his occupational injury.  Dkt. # 37-1 at 9.

Between August 13 and 21, 2012, plaintiff missed several days of work due to his injury.  Plaintiff spoke with a Boeing Disability Management Representative ("DMR") on August 13, 15, and 21, and expressed understanding of the need to cover his time and provide documentation supporting his absences; still, plaintiff failed to provide documentation for absences on August 13, 14, and 15.  Dkt. # 37-1 at 14.  On August 27, 2012, Boeing DMR Katie Lashua submitted a light-duty accommodation request on plaintiff's behalf.  Dkt. # 37-1 at 14; Dkt. # 37-2 at 29.  According to Ms. Lashua, the "Ergo Crib" told Ms. Lashua that they could no longer offer plaintiff a light-duty accommodation because his attendance was not reliable.  Dkt. # 37-1 at 14; Dkt. # 37-2 at 29.  On August 30, 2012, plaintiff was granted a light-duty accommodation in a different Boeing department.  Dkt. # 37-1 at 11.

Also on August 30, 2012, plaintiff reported to Boeing's medical department for clearance to work.  Dkt. # 37-1 at 30.  While there, plaintiff reported a new occupational injury, dating back to August 7, 2012.  Plaintiff did not notify his manager or a Disability Management

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 3

1  Representative about this new injury. Dkt. # 37-1 at 30–31. Plaintiff reported to work on
2  Tuesday, September 4, 2012, but did not attend work on September 5 or 6, 2012, and he did not
3  provide notice or justification for these absences. Dkt. # 27-1.

4  On September 11, 2012, Tim Fowler, a senior manager in plaintiff's department, sent a
5  message to the department notifying them that plaintiff was on medical leave and had not been
6  cleared to return to work by Boeing's disability management department. Dkt. # 37-1 at 16.
7  Mr. Fowler instructed plaintiff's department that, if plaintiff reported to work, they were to
8  instruct plaintiff that he was not allowed to be in the factory or to perform any kind of work
9  without first being cleared by Boeing's medical department. Dkt. # 37-1 at 16.

10  On September 12, 2012, Mr. Fowler and Kristine Hansen, a Boeing human resources staff
11  member, notified plaintiff that he had been "suspended indefinitely pending an investigation."
12  Dkt. # 37-1 at 18, 23. Plaintiff was not informed of the subject of the investigation, and was told
13  not to contact any Boeing employee other than Ms. Hansen. Dkt. # 37-1 at 18. Ms. Hansen
14  testified in a deposition that members of the Boeing Human Resources Investigation department
15  had told her to suspend plaintiff indefinitely, and that she did not know why they had ordered
16  this suspension. Dkt. # 37-1 at 21.

17  Beginning on September 20, 2012, plaintiff was placed on medical leave. Dkt. # 37-1 at
18  34. On October 5, 2012, Ms. Lashua noted in Boeing's human resources system that, as of
19  September 20, 2012, plaintiff was on "occupational timeloss" rather than "on a leave initiated by
20  the company effective 9/12/12." Dkt. # 37-1 at 34; see also id. at 5.

21  On October 17, 2012, plaintiff entered an *Alford* plea and was convicted of making false
22  or misleading statements to a public servant, a misdemeanor. Dkt. # 23-1 at 19–20, 43–51. That
23  same day, plaintiff's sentencing was scheduled for December 6, 2012. Dkt. # 23-1 at 20–21; id.
24  at 43–44. At that time, plaintiff anticipated that, due to the terms of the plea agreement, he
25  would be incarcerated for 45 days, starting December 6, 2012. Dkt. # 23-1 at 24–25.

26  On October 22, 2012, plaintiff saw Dr. Gregory A. Komenda about his left shoulder.

27
28  ORDER GRANTING DEFENDANT'S
    MOTION FOR SUMMARY JUDGMENT - 4

Dr. Komenda concluded that plaintiff was not capable of returning to work and wrote a letter to that effect. Dkt. # 23-1 at 22–23; Dkt. # 23-1 at 40–41. In reliance on Dr. Komenda's opinion, Boeing extended plaintiff's medical leave through December 2012. Dkt. # 23-1 at 59. When asked whether Dr. Komenda knew that plaintiff "would be using medical leave to cover jail time," plaintiff responded, "Probably not." Dkt. # 23-1 at 23.

On December 6, 2012, plaintiff was sentenced to 45 days in jail and immediately taken into custody. Dkt. # 37-2 at 10. Plaintiff did not inform Boeing of his incarceration and did not ask Boeing for work-release for this period of incarceration. Dkt. # 32 at 8; Dkt. # 23-1 at 34–36. On December 8, 2012, a rumor circulated at Boeing that plaintiff was incarcerated. Dkt. # 31 at 1; Dkt. # 25, ¶ 2. On December 14, 2012, a specialist from Boeing's Security Background Screening Department emailed Boeing Human Resources staff and plaintiff's supervisor to inform them that plaintiff had been convicted and incarcerated on December 6. Dkt. # 37-2 at 10; Dkt. # 25, ¶ 2.

Boeing's attendance guidelines provide that six or more consecutive unexcused absences may result in discharge for "Abandonment of Job" or "Extended Absence." Dkt. # 34 at 5. The guidelines further provide that "Discharge is the only step of corrective action when addressing Abandoned Job . . . or Extended Absence." Dkt. # 34 at 7. Though Boeing does occasionally permit employees to participate in work-release programs on a discretionary basis, Dkt. # 25, ¶ 3, Boeing does not allow employees to use medical leave to cover jail time, Dkt. # 34 at 1, 13. Boeing introduced evidence that it has previously discharged twelve employees due to extended unexcused absences resulting from incarceration, and that eight of these twelve did not have pending or recent claims for disability leave. Dkt. # 32 at 1; Dkt. # 30 at 1; Dkt. # 34 at 2; Dkt. # 23-1 at 77. Plaintiff introduced testimony from a Boeing Human Resource Specialist that a person who was incarcerated during a disciplinary suspension could not be terminated for failing to attend work. Dkt. # 37-2 at 7. Ms. Hansen testified to her understanding that, at the time of plaintiff's incarceration, he was on an approved medical leave, and that no light-duty work was

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 5

available for him.  Dkt. # 37-1 at 25.

Boeing marked as unexcused plaintiff's absence from December 6 to December 14, 2012, and terminated plaintiff's employment on December 14, 2012.  Dkt. # 32 at 17; Dkt. # 37-2 at 2.  When Ms. Hansen emailed plaintiff's supervisor to tell him that she had terminated plaintiff in Boeing's human resources system, she concluded:  "Thought you just might want to know this........ :_)"  Dkt. # 37-2 at 12.  Plaintiff received his notice of termination on January 6, 2013, when he returned home from jail.  Dkt. # 40, ¶ 11.

On December 4, 2015, plaintiff sued Boeing for terminating him because of his disability in violation of Washington's Law Against Discrimination ("WLAD"), RCW 49.60, *et seq*., and for wrongfully discharging him in retaliation for his pursuit of workers' compensation benefits.  Dkt. # 1.  Five days later, in response to the Court's order to show cause, Dkt. # 3, plaintiff filed an amended complaint clarifying that he seeks over $75,000 in damages, Dkt. # 5.  Boeing now seeks summary judgment on all of plaintiff's claims.  Dkt. # 29.

## DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact which would preclude the entry of judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has satisfied its burden, it is entitled to summary judgment if the nonmoving party fails to designate specific facts showing that there is a genuine issue of material fact for trial.  Id. at 324.  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party.  In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient," and factual disputes whose resolution would not affect the outcome of

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 6

the suit are irrelevant to the consideration of a motion for summary judgment. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court will view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Mueller v. Auker, 576 F.3d 979, 991 (9th Cir. 2009).

**B.     Washington's Law Against Discrimination**

Plaintiff asserts claims under Washington's Law Against Discrimination ("WLAD"), RCW 49.60, *et seq.*, for disparate treatment and failure to accommodate. Plaintiff argues that Boeing terminated him because it did not want to accommodate his disability and the various work restrictions that it entailed. Boeing responds that it terminated plaintiff because he improperly used medical leave to excuse his absences during a period of incarceration. Plaintiff asserts that his incarceration cannot provide grounds for terminating him because, but for his disability, he would have been granted work-release during his incarceration and thus would have avoided the unexcused absences on which his termination was ostensibly grounded. Dkt. # 36 at 19–20, 22. Plaintiff also argues that he was not scheduled to work during his period of incarceration: that he was on an indefinite suspension and thus that he could not have been considered "absent." Dkt. # 36 at 20. For the reasons discussed below, Boeing is entitled to summary judgment on both of plaintiff's WLAD claims.

**1.     Disparate Treatment**

WLAD forbids any employer to discriminate against any person in the conditions of their employment because of a physical disability. RCW 49.60.180(3). An employee claiming wrongful termination due to disability discrimination must first establish a prima facie case of discrimination by showing that he was: (1) disabled; (2) subject to an adverse employment action; (3) doing satisfactory work; and (4) discharged under circumstances that raise a reasonable inference of unlawful discrimination. Callahan v. Walla Walla Hous. Auth., 126 Wn. App. 812, 819–20 (2005). Once the employee has established a prima facie case, the burden

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 7

shifts to the employer to present evidence suggesting a nondiscriminatory reason for the termination. If the employer meets its burden, the employee must then demonstrate that the reasons given by the employer are pretextual. See Brownfield v. City of Yakima, 178 Wn. App. 850, 873 (2014).

Even assuming that plaintiff has met his burden of demonstrating a prima facie case of disability discrimination,[2] plaintiff has failed to identify a genuine issue of fact as to whether Boeing's nondiscriminatory reasons for terminating him were pretextual. Boeing asserts that it terminated plaintiff due to his "excessive unexcused absences," Dkt. # 29 at 1, and introduces ample evidence – including testimony from plaintiff himself – demonstrating that plaintiff had a history of using medical leave to cover absences from work due to court appearances and jail time. See Dkt. # 23-1 at 15–18. Boeing policy forbids the use of medical leave to cover absences due to incarceration, and has previously discharged twelve employees (both disabled and non-disabled) due to extended unexcused absences resulting from incarceration. Dkt. # 32 at 1; Dkt. # 30 at 1; Dkt. # 34 at 1, 2, 13; Dkt. # 23-1 at 77. Plaintiff was on medical leave during his December incarceration. Dkt. # 31, ¶ 2; Dkt. # 37-1 at 5, 34; Dkt. # 21, ¶ 10. At the time plaintiff obtained that medical leave, plaintiff anticipated that he would be incarcerated during the period for which he sought leave. Dkt. # 23-1 at 23–25. Though plaintiff introduces evidence that Boeing human resources staff were relieved that plaintiff had been terminated, see Dkt. # 37-1 at 25–26; Dkt. # 37-2 at 12, plaintiff identifies no evidence suggesting that this relief was due to his disability rather than to his improper use of medical leave.

Plaintiff argues that Boeing deprived him of the opportunity to participate in work-release because of his disability, but plaintiff testified explicitly that he never contacted Boeing about work-release for his December incarceration, and that Boeing did not deprive him of the opportunity to apply for work-release. Dkt. # 32 at 8; Dkt. # 23-1 at 34–36.

---

[2] It is undisputed that plaintiff was disabled and subject to an adverse employment action, and plaintiff has identified some evidence that he had been doing satisfactory work. See Dkt. # 37-1 at 3–4.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 8

It is true that Boeing human resources staff testified that an employee who is incarcerated during a disciplinary suspension could not be terminated for unexcused absences, Dkt. # 37-2 at 7. Plaintiff argues that he was still suspended at the time of his incarceration and thus could not be considered absent during that time. Dkt. # 36 at 3. But the record shows – and plaintiff himself testifies, Dkt. # 21, ¶ 10 – that plaintiff was on medical leave, not suspended, at the time of his incarceration. Dkt. # 37-1 at 5, 34.

Because the record conclusively supports Boeing's assertion that it terminated plaintiff because he had been relying on medical leave to conceal his incarceration, summary judgment on plaintiff's claim of disability discrimination is appropriate. See Milligan v. Thompson, 110 Wn. App. 628, 637–38 (2002) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000)).

### 2.   Failure to Accommodate

WLAD also establishes a cause of action for discrimination based on an employer's failure to accommodate its employee's disability. See RCW 49.60.180(3); Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 145 (2004), overruled on other grounds by McClarty v. Totem Elec., 157 Wn.2d 214 (2006). To prove failure to accommodate, an employee must show that: (1) the employee had a sensory, mental, or physical abnormality that substantially limited his ability to perform the job; (2) the employee was qualified to perform the essential functions of the job; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality. Id. Plaintiff has failed to identify a genuine issue of fact as to whether Boeing adopted reasonable measures to accommodate his disability. Over the course of fifteen years, Boeing regularly accommodated plaintiff by granting him medical leave and by arranging for light-duty work appropriate for plaintiff's physical restrictions – in other Boeing departments, when necessary. Dkt. # 37-1 at 9, 11, 14; Dkt. # 37-2 at 29.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 9

Defendant's motion for summary judgment on plaintiff's claim of failure to accommodate is granted.

**C.   Wrongful Discharge**

Plaintiff also argues that he was wrongfully discharged in retaliation for pursuing worker's compensation benefits.  As with plaintiff's disability discrimination claim, Boeing responds that it terminated plaintiff because of his improper use of medical leave to conceal his incarceration, not out of any retaliatory motive.

To state a prima facie claim for the tort of wrongful retaliatory discharge, plaintiff must show (1) that he exercised the statutory right to pursue worker's benefits under RCW Title 51, or communicated an intent to do so; (2) that he was discharged; and (3) that the employer's motivation for the discharge was the employee's exercise of or intent to exercise his statutory right.  Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wn.2d 46, 68 (1991).  As discussed above, see supra Part B, the record conclusively supports Boeing's assertion that it terminated plaintiff because he had been relying on medical leave to conceal his incarceration, not out of any discriminatory or retaliatory motive.  Accordingly, plaintiff has failed to state a prima facie case of wrongful discharge, and Boeing is entitled to summary judgment on that claim.

For all the foregoing reasons, defendant's motion for summary judgment (Dkt. # 29) is GRANTED.  The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff.

DATED this 6th day of March, 2017.

*MMS Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 10